IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

REVEREND ANTHONY FEACHER, *et al.,*

               Plaintiffs,

                               Civ. Action No.
                               3:06-CV-0877 (TJM/DEP)

   vs.

INTERCONTINENTAL HOTELS GROUP,
*et al.,*

               Defendants.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFFS:

HUNT, HAMLIN LAW FIRM     RAYMOND L. HAMLIN, ESQ.
60 Park Place, 16th Floor
Newark, NJ 07102

CLARK LAW FIRM            KECIA M. CLARKE, ESQ.
60 Evergreen Place
Suite 301
East Orange, NJ 07018

FOR DEFENDANTS:

CALLAHAN, FUSCO LAW FIRM   CHRISTOPHER FUSCO, ESQ.
161 Eagle Rock Avenue
Roseland, NJ 07068

CALLAHAN, FUSCO LAW FIRM   MATTHEW STOCKWELL, ESQ.
40 Exchange Place
18th Floor
New York, NY 10005

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

This action, which was commenced in the District of New Jersey but subsequently transferred to this court, involves civil rights claims asserted by the plaintiffs growing out of defendants' refusal to permit them to enter a public restaurant for the purpose of eating breakfast during a bus ski trip, allegedly on the basis of their race.  Currently pending before the court in connection with the matter is a dual-pronged application by the plaintiffs to compel discovery.  In their motion, plaintiffs seek to elicit the court's assistance in scheduling depositions, and for the purpose of obtaining access to a statement taken from a non-party witness by an investigator retained by the defendants' attorney.

I.    DEPOSITION SCHEDULING

The first portion of plaintiffs' motion centers around the parties' inability to schedule depositions of the plaintiffs and several present or past employees of the Binghamton, New York Holiday Inn, the hotel and restaurant facility at which the discriminatory acts are alleged to have occurred, and to reach agreement as to whether those depositions should be taken in Binghamton, New York, where the relevant events occurred, or

instead in New Jersey, where plaintiffs reside and their attorneys practice.[1]

Because it appears from the parties' written communications with the

court, as confirmed during oral argument, that they have now resolved

their differences and have been able to schedule the depositions in issue,

I am treating this portion of plaintiffs' motion as having been withdrawn,

without prejudice to their right to renewal in the event the scheduled

depositions do not occur as planned.

II.    <u>WITNESS STATEMENT</u>

The second component of plaintiffs' motion concerns a statement

taken by an investigator, retained by defendants' counsel to investigate

plaintiffs' allegations in this matter, from Pamela Cantres, a potential

witness who is not a party to the action.  According to defendants'

submissions, that statement was taken on May 9, 2007 – several months

after commencement of suit.

In defense of their refusal to disclose the disputed statement,

defendants argue that it represents classic work product which is not

discoverable absent circumstances not presented.  In response, plaintiffs

assert that the statement is strictly factual in nature, without revealing

---

[1]     One of the individuals whose deposition the parties were at one time
attempting to schedule is defendant Timothy Brown, who at the relevant times was the
manager of the Binghamton Holiday Inn at the relevant times.  Brown, who earlier had
been in treatment for a serious medical condition, thereby making it difficult to schedule
and conduct his deposition, has since died.

litigation strategy or attorney thought process, and thus does not

constitute work product.  Plaintiffs further maintain that in any event they

have demonstrated substantial need for the statement, additionally

contending that by not including it in an appropriate privilege log, the

defendants have waived their right to claim work product protection of the

disputed statement, thus providing two independent bases for the court to

order its disclosure notwithstanding the work product doctrine.

A.    Whether The Statement Constitutes Work Product[2]

_____

[2]        During the course of briefing in connection with plaintiffs' motion the
parties have also addressed the attorney-client privilege.  The contours of the attorney-
client privilege are defined by Rule 501 of the Federal Rules of Evidence, which in a
case such as this provides that matters of privilege are informed by decisional authority
of the federal courts "in the light of reason and experience."  Fed. R. Evid. 501; *see
also United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 505 (2d Cir. 1991).
Although variously stated, depending upon the context in which it has been presented,
the attorney-client privilege is generally thought to encompass eight distinct elements,
applying in instances

> (1) where legal advice of any kind is sought (2) from a
> professional legal adviser [sic] in his capacity as such, (3)
> the communications relating to that purpose (4) made in
> confidence (5) by the client, (6) are at his instance
> permanently protected (7) from disclosure by himself or by
> the legal adviser [sic], (8) except the protection be waived.

*Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 517 (S.D.N.Y. 1992) (quoting
8 J. Wigmore, Evidence § 2292 at 554 (McNaughton Rev. 1961)).  It has been noted,
moreover, that while this formulation is obviously limited to communications from client
to attorney, "courts appear to hold that the same protection should extend to legal
advice rendered by the attorney, at least if it might reflect or reveal the client's
confidential communications."  *Lee Apparel Co.*, 143 F.R.D. at 517-18 (collecting
cases).  Because there is no indication of any attorney-client relationship between
defendants' counsel and Pamela Cantres, the attorney-client privilege is not implicated,
even assuming its extension to cover a statement taken by a non-attorney investigator
retained by counsel.

Materials prepared in anticipation of litigation are protected from disclosure under Rule 26(b)(3) of the Federal Rules of Civil Procedure, which memorializes a doctrine having its roots in the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947).[3]  To warrant protection under this provision, a document must comprise 1) a document or tangible thing which 2) was prepared in anticipation of litigation 3) by or for a party, or by or for its representative.  *United States v. Adlman*, 68 F.3d 1495, 1500-01 (2d Cir. 1995); *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 69 (N.D.N.Y. 1998) (Hurd, M.J.) (citations omitted).  As is the case with regard to other discovery exemptions, the burden of establishing entitlement to work product protection rests squarely with the

---

[3]   That rule provides, in pertinent part, that

> [s]ubject to the provisions of subdivision (b)(4) of this rule [related to expert discovery], a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

party seeking to avoid disclosure.  *Tayler*, 183 F.R.D. at 69; *see also*

*Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470

(S.D.N.Y. 1993) (citations omitted).

Although the rule itself is not so limited in its application, by its

express terms Rule 26(b)(3) pays particular deference to the work product

of an attorney.  Attorney work product is best described as encompassing

the mental impressions and legal opinions made by a lawyer, the

governing rule in essence creating "a zone of privacy for an attorney's

preparation to represent a client in anticipation of litigation."  *In re Grand*

*Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 160 (2d Cir. 2002)

(citing *Hickman*, 329 U.S. at 510-11, 67 S. Ct. at 393 and *United States v.*

*Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)).

At issue in this instance is a statement taken by an investigator

retained by defendants' counsel, following the commencement of litigation,

and tasked by the attorney with investigating the plaintiffs' claims.

Ordinarily, the product of such an investigation would be regarded as

quintessential work product.  *See United States v. Nobles*, 422 U.S. 225,

238-39, 95 S. Ct. 2160, 2170 (1975) ("It is . . . necessary that the [work

product] doctrine protect material prepared by agents for the attorney as

well as those prepared by the attorney himself [or herself].");  *see also*

*Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 869590, at *2

6

(E.D.N.Y. Mar. 20, 2007) (finding that witness statements secured by an investigator working at the request of plaintiff's counsel and prepared in anticipation of litigation qualified as attorney work product).  To require the disclosure of such matters would significantly erode the effectiveness of an attorney's legal representation, and in turn do substantial injury to the values upon which the work product doctrine is predicated.

In their submissions, and during oral argument, plaintiffs have attempted to draw a distinction between a mere verbatim witness statement taken by an investigator on the one hand, and a report or analysis, generated based upon such statements, which may include within it mental impressions or clues regarding litigation strategy.  The work product doctrine, however, does not readily admit of such a distinction.

Undeniably, the paramount concern serving as the foundation upon which the work product doctrine rests, particularly when invoked to protect attorney-generated materials, is the preservation of an attorney's mental impressions and litigation strategies.  *See Hickman*, 329 U.S. at 510-11, 67 S. Ct. at 393; *see also Abdell v. City of New York,* No. 05 Civ. 8453, 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2006) (concluding that "'[c]ore' work product [consisting of attorney mental impressions] . . . [is] subject to more stringent protection" than purely factual work product).

Such attorney thought processes, however, can manifest themselves in many ways, some more subtle than others.  Thus, by way of example, a request for the production of documents gathered and retained by an attorney during the course of his or her investigation, while seemingly benign, may well implicate work product, since "[t]he very decision of counsel to retain particular documents involves the exercise of an attorney's judgment."  *Herbert v. Lando,* No. 74 Civ. 434, 1982 U.S. Dist. LEXIS 10934, at *5 (S.D.N.Y. Jan. 11, 1982).  By the same token, analysis of the questions asked when securing an otherwise purely factual account from a potential witness could indirectly provide enlightenment as to the litigation strategy being developed or explored.  To attempt to divine pure facts from mental impressions in such statements and parse out for discoverability purposes the purely factual portions is not always an easy task, since oftentimes such distinguishing features are not so easily discerned.[4]

The response of the courts to the question of whether purely factual witness statements constitute work product has been far from uniform.

---

[4]     One could argue that at least to some degree, this is a concern which could be monitored through *in camera* inspection.  In this instance I have reviewed the disputed statement, which appears to be a verbatim transcript of a tape-recorded interview conducted in question and answer format.  Although, as noted above, it is often difficult to determine whether such a statement discloses litigation strategy, either directly or implicitly, at least on its face the Cantres statement does not appear to implicate legal strategy or attorney thought processes.

Some, supporting plaintiffs' argument in this regard, have attempted to differentiate between purely factual statements obtained from witnesses and reports embodying mental impressions, and finding the former to be discoverable, while preserving the sanctity of the latter. *See*, *e.g.*, *Johnson v. Bryco Arms,* No. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005) (finding that statement from non-party witness, taken by investigator employed by investigative agency, not by defendants' attorneys, containing only facts, did not constitute work product); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties LLC*, No. 01 Civ. 9291, 2002 WL 1455346, at *7 (S.D.N.Y July 3, 2002) (indicating that notes taken by individuals at the direction of attorney were not subject to work product privilege because the notes "merely set forth the facts that were reported to the attorney"). Others, on the other hand, have taken a more restrictive approach and have instead flatly excluded access to such statements, regardless of their character. *See, e.g., Kagan v. Langer Transport Corp.,* 43 F.R.D. 404, 405 (S.D.N.Y. 1967); *Snyder v. United States*, 20 F.R.D. 7, 8-9 (E.D.N.Y. 1956); *see also Garnier v. Illinois Tool Works, Inc.*, No. 04-CV-1825, 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006) (considering as work product a certification provided by employee of defendant regarding plaintiff's discrimination and harassment allegations, despite the lack of mental impressions of counsel contained therein, and

denying plaintiff's motion to compel production of the certification); *cf.*
*Lopez*, 2007 WL 869590, at *2-4 (holding that purely factual witness
statements are entitled to "at least minimal work product protection" but
finding a waiver of the privilege by virtue of a failure to properly list and
describe them on a privilege log, and additionally finding substantial need
outweighing work product considerations).

Importantly, the arguments now raised by plaintiffs, and accepted by
those courts which have permitted disclosure of purely factual witness
statements as not constituting work product, honor only one of the
considerations which serve as foundation for the doctrine, losing sight of
another important justification for the protection which the doctrine offers.
The work product doctrine serves to encourage vigorous investigation of
disputed claims, unfettered by fear that the products of such efforts will be
compromised and fall into an adversary's hands.  *See Adlman*, 134 F.3d
at 1196 (emphasizing that the zone of privacy enveloping the work product
doctrine permits an attorney to prepare for litigation "free from
unnecessary intrusion by his [or her] adversaries").  As one court has
noted,

> [t]he effect of requiring production of such
> attorney's work product would be to destroy
> counsel's incentive diligently to prepare for trial and
> to carry out his [or her] professional duties, since
> otherwise he [or she] could, merely by sitting back

10

> and doing nothing, avail himself [or herself] of the
> work product and professional diligence of counsel
> for the other side.

*Kagan*, 43 F.R.D. at 405.

In order to preserve the integrity of the work product doctrine and the zone of privacy surrounding an attorney's preparation of a case on behalf of his or her client, I respectfully reject those cases which make the distinction between purely factual witness accounts and reports revealing mental impressions, and find instead that the witness statement in question, however factual in nature it may be, is worthy of at least some degree of work product protection.[5]  *Kagan*, 43 F.R.D. at 405; *Lopez,* 2007 WL869590, at *2-3; *see also Abdell*, 2006 WL 2664313, at *5 (while recognizing, *inter alia,* that one of the underlying purposes of the work product doctrine is to prevent "a windfall for indolent attorneys", that factor was found not to apply to the question of providing district attorney fact sheets prepared in connection with criminal prosecutions to attorneys engaged in civil litigation).

---

[5]     Naturally, the witness statement in issue will likely have to be made available to the plaintiffs' counsel if Ms. Cantres is called upon by the defendants to testify at trial.  *Cf. Whitfield v. Ricks*, No. 01 Civ. 11398, 2006 WL 3030883, at *19 (S.D.N.Y. Oct. 24, 2006) (recognizing, in the realm of criminal proceedings, the prosecution's obligation to provide the defense with any non-confidential written or recorded statements of prosecution witnesses related to the witness' testimony for use during cross-examination).

Because the work product doctrine, as embodied in Rule 26(b)(3), does not stop at protecting mere litigation strategy, but instead goes further to insure that, by affording protection to the results of investigations into litigated claims, the adversary system upon which our civil judicial system is predicated the interests of justice will best be served, the distinction between litigation strategy and matters of pure fact does not control the work product analysis.[6]  As the Second Circuit has observed, in response to the suggestion that a court should attempt to dissect pure fact from mental impressions in such circumstances,

> [w]hile it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, *see* Fed. R. Civ. P. 26(b)(3), we see no reason why work product cannot encompass facts as well.  It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information.  *See* Fed. R. Civ. P. 26(b)(3).  If an attorney for a suspect, or an investigator hired for the suspect, undertakes a factual investigation, examining *inter alia*, the scene of the crime and instruments used in the commission of the crime, we see no reason why a work product objection would not properly lie if the Government called the attorney or

---

[6]     This distinction is relevant, however, in determining the extent of the work product protection to be afforded, with attorney strategy and impressions generally being accorded a higher degree of protection.  *See Lopez*, 2007 WL 869590, at *2.

> investigator before the grand jury and asked "What
> facts have you discovered in your investigation?"

*In re: Grand Jury Subpoena,* 282 F.3d at 161.   Accordingly, I find that the

statement in issue constitutes work product and is subject to the

provisions of Rule 26(b)(3).

###### B.   Substantial Need

The finding that the witness statement now in question constitutes

work product does not end the inquiry.  Like the attorney-client privilege,

the work product doctrine is not without exception.  The type of conduct

which would trigger the crime fraud exception to the attorney-client

privilege, for example, likewise serves to preempt the work product

doctrine and its immunity.  *Madanes v. Madanes*, 199 F.R.D. 135, 151

(S.D.N.Y. 2001); *see also Craig v. A.H. Robins Co., Inc.*, 790 F.2d 1, 4 (2d

Cir. 1986).  Similarly, as the governing rule itself provides, production of

material prepared in anticipation of litigation may be ordered if the

requesting party can demonstrate "substantial need of the materials in the

preparation of the party's case and that the party is unable without undue

hardship to obtain the substantial equivalent of the materials by other

means."  Fed. R. Civ. P. 26(b)(3); *see Brock v. Frank V. Panzarino, Inc.,*

109 F.R.D. 157, 159 (E.D.N.Y. 1986).  Under appropriate circumstances,

disclosure under this provision may be ordered unless it would invade the

"mental impressions, conclusions, opinions, or legal theories of an attorney[.]" Fed. R. Civ. P. 26(b)(3).  A "trial court has wide discretion in determining the existence of substantial need and undue hardship.  *Brock*, 109 F.R.D. at 159 n.4 (citing *Ross v. Bolton,* 106 F.R.D. 22, 23 (S.D.N.Y. 1985)).

In this instance, plaintiffs' efforts to show substantial need for the Cantres statement are woefully insufficient.  It appears from the record that plaintiffs' attorneys have been provided with the identity and address of the witness in question, and thus have been afforded the same opportunity to contact that individual and obtain a statement as did the defendants' investigator.[7]  Accordingly, I find the plaintiffs have not carried their burden of proving substantial need for the work product materials in question.  *See*, *e.g.*, *Gargano v. Metro-North*, 222 F.R.D. 38, 40 (D. Conn. 2004) (finding that plaintiff failed to establish substantial need for witness statements made to claim investigator immediately following accident where witnesses were available for questioning by plaintiff); *see also Garnier*, 2006 WL 1211201, at *2 (finding that substantial need was not demonstrated where other discovery devices, including depositions, provided alternative means for a party to obtain the substantial equivalent

---

[7]        Indeed, from the statement reviewed by me *in camera* it appears that the witness may have previously been contacted by the plaintiffs or someone else acting on their behalf.

of the requested discovery) (collecting cases).

C.   Waiver

Plaintiffs further argue that notwithstanding a finding of work product and their inability to satisfy the court of a substantial need for the disputed materials, the defendants have nonetheless waived their right to claim work product protection of the statement in question, and they are therefore nonetheless entitled to an order compelling disclosure of the disputed witness statement.   In their submission addressing the witness statement issue, defendants have not responded to this argument.

The Federal Rules of Civil Procedure require the preparation of an index of all documents withheld from discovery under claim of attorney-client privilege, work product doctrine, or some other recognized privilege.[8] *See* Fed. R. Civ. P. 26(b)(5)(A); *see also Scanlon v. Bricklayers and Allied*

---

[8]     The rule governing privilege indices provides, in relevant part, that

> [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege and protection.

Fed. R. Civ. P. 26(b)(5)(A).

*Craftworkers, Local No. 3*, 242 F.R.D. 238, 245 (W.D.N.Y. 2007).  This is no salutary requirement, instead serving the purpose of alerting litigants to the existence of documents being withheld under claim of privilege in order to permit any such claim to be challenged, and, if necessary, determined by the court.  *See* Fed. R. Civ. P. 26(b)(5)(A), Advisory Committee Notes.

The failure of a party to list a document withheld during the course of discovery on a privileged log, or to provide a privilege log altogether, ordinarily results in a finding that the privilege otherwise asserted as been waived.  *Lopez,* 2007 WL 869590, at *3 (collecting cases); *Lugosch v. Congel,* No. Civ. 00-CV-0784, 2006 WL 931687, at *15 (N.D.N.Y. Mar. 7, 2006) (failure to timely provide the privilege log or objection constitutes a waiver of any of the asserted privileges."); *see also Johnson,* 2005 WL 469612, at *6.  In this instance, while the disputed statement was obtained after suit was filed, and it does not appear that defendants have gone to any great lengths to hide the fact that they have within their possession the disputed witness statement, I nonetheless find that by virtue of not producing an index of documents withheld on the basis of privilege and listing the Cantres statement on that log, defendants have waived their right to work product protection with respect to that statement.

III.    <u>SUMMARY AND ORDER</u>

One of the major objectives to be served by the work product doctrine is to foster thorough and zealous representation of a client during the course of a litigated or otherwise disputed legal matter.  In furtherance of this goal, the work product doctrine serves not only to protect attorney impressions and guard against disclosure of litigation strategies, but also encourages thorough investigation of disputed claims by insuring that an adversary will not gratuitously benefit from the results of such an investigation.  This objective would be significantly undermined by permitting an opposing party to benefit from a litigant's labor in investigating a disputed claim.  Accordingly, I find that the disputed statement is entitled to work product protection, and further conclude that plaintiffs have failed to establish a substantial need for the disputed statement sufficient to overcome work product protection.  Despite these findings, because defendants have failed to prepare and serve a proper index of materials withheld under claim of privilege and work product, and to include the disputed witness statement on that log, it is hereby

ORDERED as follows:

1)     Plaintiffs' motion for an order compelling discovery and specifically requiring defendants' production of a statement taken from Pamela Cantres, a non-party witness, *see* Dkt. No 19, is hereby GRANTED.   Defendants shall produce to plaintiffs' counsel, within twenty

17

calendar days of the date of this order, the witness statement in question.

2)      Plaintiffs' motion for an order compelling discovery addressing the scheduling of depositions is deemed WITHDRAWN, without prejudice, based upon the parties apparent agreement on this issue.

3)      The clerk is directed to promptly forward copies of this order to counsel for the parties pursuant to this court's local rules.


Dated:      October 22, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge