**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**REVEREND ANTHONY FEACHER,**
**and BRENDA FEACHER,**

                                        **Plaintiffs,**

     **-against-**                                        **06-CV-877**

**INTERCONTINENTAL HOTELS GROUP,**
**its employees, agents and/or servants,**
**MANAGER TIMOTHY BROWN, and**
**JOHN DOE OWNER, RICHARD ROE**
**RESTAURANT MANAGER, VISTA**
**PROPERTY MANAGEMENT, its**
**employees, agents and/or servants,**
**ARENA HOTEL, its employees, agents**
**and/or servants, and HOLIDAY INN, its**
**employees, agents and/or servants,**
**JANE DOE (1-5) and JOHN DOE (1-5),**

                                        **Defendants.**


_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

                         **DECISION & ORDER**

**I.      INTRODUCTION**

        This action, which was commenced in the United States District Court for the

District of New Jersey and transferred to this Court, see July 6, 2006 Mem. & Ord., p. 6

[Dkt. #7 ], asserts racial discrimination claims pursuant to 42 U.S.C. § 1983 (violation of

First Amendment right to association and the Fourteenth Amendment right to equal

protection); 42 U.S.C. § 1981 (denial of right to make and enforce contracts and of the

1

equal benefits of law); 42 U.S.C. § 1985(3) (conspiracy to deprive Plaintiffs of the right to make and enforce contracts and of the equal benefits of law); 42 U.S.C. § 1986 (failure to prevent such conspiracy);  42 U.S.C. 2000a, *et seq.* (denial of access to public accommodations);  New York Civil Rights Law §§ 40 and 41 (denial of access to public accommodations); state common law (negligent failure to properly train and supervise restaurant staff to prevent discriminatory conduct); and the New Jersey State Constitution. See dkt. # 1.  Plaintiffs seek injunctive relief and monetary damages. Id.

By prior orders, all claims against Defendants "Holiday Inn" and Timothy Brown were dismissed.  See July 6, 2006 Mem. & Ord., p. 6;[1] Jan. 7, 2008 Order [dkt. # 29].[2] Defendants move for summary judgment seeking to dismiss the remaining claims in this action. [Dkt. # 31].  Plaintiffs have opposed the motion. [Dkt. # 37].  The Court has elected to resolve the motion based upon the submissions.  For the reasons that follow, the motion is granted in part and denied in part.

## II.    STANDARD OF REVIEW

The Court will apply the well settled standard for summary judgment as defined by statute, see FED. R. CIV. P. 56(c), case law, see Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and this Court's Local Rules. See

---

[1]The Complaint was dismissed without prejudice as to Defendant "Holiday Inn" because "[t]he name 'Holiday Inn' is a trademark" and, therefore, "Holiday Inn [was] improperly plead as a defendant in this action." July 6, 2006 Mem. & Ord., p. 6.  Although given the opportunity, Plaintiffs did not amend the Complaint to name a different defendant for "Holiday Inn." See id.  ("What is not clear is whether Plaintiffs meant to bring this lawsuit against Holiday Inn, Inc., Holiday Hospitality Franchise, Inc., or some other entity. . . . Plaintiffs may amend the Complaint to identify the correct defendant.").

[2]All claims against Defendant Timothy Brown, who passed away, were dismissed with prejudice after Plaintiffs failed to substitute an estate representative. See 1/7/08 Order.

N.D.N.Y.L.R. 7.1.

## III.   BACKGROUND

Plaintiffs have failed to submit a responsive Local Rule 7.1(a)(3) statement that

mirrors the allegations in the Defendants' Local Rule 7.1(a)(3) statement.  Thus, the

allegations in Defendants' statement are deemed admitted for purposes of this motion.

See N.D.N.Y.L.R. 7.1(a)(3).[3]   Viewing the admissible evidence in the light most favorable

to Plaintiffs and drawing all reasonable inferences in their favor, see Abramson v. Pataki,

278 F.3d 93, 101 (2d Cir. 2002), results in the following account.

Plaintiffs, who are both African-American, participated in a ski group bus trip that

traveled from Rahway, New Jersey to Binghamton, New York in February 2004. The group

stayed at the Holiday Inn ("the Hotel") from February 13, 2004 through February 15, 2004.

At the time, Arena Hotel Corporation ("Arena"), which did business as the Holiday Inn in

Binghamton, New York, was a licensee to a franchise agreement with Holiday Hospitality

Franchising Inc. ("HHFI") and Six Continents Hotels, Inc. ("Six Continents").  Dkt. # 3, Ex.

A.  HHFI and Six Continents had no control over the day-to-day operations of the Hotel

and was a separate and distinct entity from Arena. Dkt. # 3,  Ex. C.   "It is unclear why

plaintiffs named Intercontinental Hotels Group as a defendant, particularly when they were

provided with an Affidavit showing that Six Continents Hotels, Inc. and Holiday Hospitality

Franchising, Inc. are the proper franchisor parties, and [Plaintiffs] never sought to amend

their Complaint." Def. Mem L. p. 13.  Plaintiffs have provided no further information on this

---

[3]N.D.N.Y.L.R. 7.1(a)(3) provides in pertinent part that "[t]he non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. . . . Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." (emphasis in original).

question.  "Although not entirely clear, Vista [Property Management] appears to be an entity connected to the ownership of Arena." July 6, 2006 Mem. & Ord., p. 6 (citing dkt. # 3, Ex. A).  From Defendants' submissions on this motion, it appears that Vista is the operational arm of Arena at the Hotel, at least with regard to the operation of the Hotel's restaurant.

The ski trip was run by Eastern Light Getaways.  Eastern Light Getaways entered into a contract with the Hotel for a package of accommodations that included hotel rooms for Friday and Saturday night, a "welcome reception" on Friday evening, breakfast on Saturday and Sunday, dinner on Saturday, early dinner on Sunday, an open bar, disc jockey, and use of the Hotel's ballroom and lounge for specified activities during the weekend. See Def. Ex. H.  Ski trip patrons paid for their trip in advance so the accommodations, such as the meals, did not have to be paid for at the Hotel.  Ski trip patrons were given arm bands to identify them and allow them to receive the agreed-upon accommodations. The Hotel set up the group's meals in the ballroom.  Ski trip patrons were allowed to access any other accommodations offered at the Hotel, such as the restaurant, but each patron was responsible for the individual cost of these extras.

The group arrived at the Hotel on Friday evening, February 13, 2004.  Plaintiffs checked in, went to their room, and then went to the Hotel's restaurant at approximately 9 P.M.  See A. Feacher Dep., p. 19.  They  were informed by unidentified employees at the restaurant that it was closed.  At the time, Plaintiffs saw  two Caucasian couples enter and be seated in the restaurant. Id. pp. 19-20, 28-29.  Plaintiffs did not see the couples eating or drinking. Def. L.R. 7.1(a)(3) Stat. ¶ 9.  Anthony Feacher asked why they could not enter

and was told:  "We're closed for you."  Id. ¶ 6; but see id. ¶ 7.[4]  Anthony Feacher thought that the exchange was "strange" but did not speak to any hotel employees or management about the situation.  Id. ¶ 10.  Plaintiffs then went to their room, ordered food from a local establishment that delivered to the Hotel, and, after eating, participated in activities in the Hotel's lounge that included dancing and mingling with other participants of the ski group. Id. ¶ 11; but see id. ¶ 8.[5]

The next day, Plaintiffs went to the Hotel's restaurant for breakfast.  The host or hostess asked: "What do you people want here?"  Anthony Feacher replied: "We would like to be seated to be served."  The host or hostess then seated Plaintiffs in the back of the restaurant. Id. ¶ 12; but see id. ¶ 13.[6]  Anthony Feacher contends that there were empty tables in the middle of the restaurant and felt that being seated in the back of the restaurant was humiliating. See A. Feacher dep. trans., p. 35; but see B. Feacher dep. trans. pp. 18-19 (testifying that there were no other open tables at the time).  Plaintiffs did not complain of their seating arrangement, were served the food they ordered, and paid for their meals without incident. Def. L.R. 7.1(a)(3) Stat. ¶ 19.

On Sunday, February 15, 2004, Plaintiffs went downstairs to eat brunch in the restaurant because they wanted to have an omelette prepared by the "world famous

---

[4]"Mrs. Feacher testified that plaintiffs said nothing to either the hotel employees or the couples that were allegedly seated.  Mrs. Feacher testified that, at the time, she did not think that what occurred had anything to do with her race, and that it 'really didn't matter to [her].'"  Def. L.R. 7.1(a)(3) Stat. ¶ 7 (citing and quoting Brenda Feacher's dep. trans. pp. 14-15).

[5] "Further in contrast to their deposition testimony, plaintiffs' discovery responses state that they 'were denied access and sent to eat in a different area.'"  Def. L.R. 7.1(a)(3) Stat. ¶ 8.

[6] "Mrs. Feacher admitted that a Holiday Inn employee 'asked what we were doing in there because the buffet was set up somewhere else for ski participants.'  When the plaintiffs stated that they would like to order from the menu, they were seated in the back of the restaurant." Def. L.R. 7.1(a)(3) Stat. ¶ 13.

omelette chef" who was advertised to be in the Hotel restaurant that day.   When they

arrived, a "circle of employees" inside the restaurant asked Plaintiffs: "What the F do you

want," and "What the F are you doing here."  Id. ¶ 24.  Feacher responded: "We're here to

have breakfast," to which a Hotel employee stated: "You people belong in the back."  Id. ¶

25.   Feacher then asked if they could be seated, and heard Timothy Brown, the

restaurant manager, say to another employee: "Sit those f------  n-----ers  right there so we

can watch them." Id. ¶ 26;  but see ¶¶ 27-28;[7]  B. Feacher dep. trans. p. 37.[8]  Plaintiffs

were seated in the front of the restaurant in close proximity to where the omelettes were

being prepared.  Plaintiffs felt the location was "uncomfortable" because smoke from the

omelets was blowing on them and because patrons ordering omelettes were standing

close to Plaintiffs' seats. See B. Feacher dep. trans. p. 34.

> Plaintiffs . . . then went to the omelet station, where they ordered omelets
> and were served.  As the plaintiffs attempted to sit down, an unidentified
> employee allegedly took the plates out of the plaintiffs' hands, and threw the
> food in the garbage.   The unidentified employee, after taking the plates from
> the plaintiffs, allegedly stated, "You people don't belong here.  You belong in
> the back."  In response, Mr. Feacher asked to speak with the manager, who
> came from the kitchen area.   Timothy Brown identified himself as the
> manager/owner, and allegedly stated, "You people don't belong here.  Get

---

[7] Defendants' L.R. 7.1(a)(3) Statement provides :

27.    In contrast to Mr. Feacher's testimony, Mrs. Feacher testified that the plaintiffs were
only asked what they were doing there, and when plaintiffs replied that they wanted to "try out
the omelet," they were seated in the front by the omelet station. (See Stockwell Aff., Exhibit
"B" [Brenda Feacher dep. trans.], p. 29).

28.    According to Mrs. Feacher, prior to the plaintiffs being seated, Mr. Brown said
nothing other than "What are these people doing in the restaurant." (See Stockwell Aff.,
Exhibit "B", p. 30).

Id. ¶¶ 27-28.

[8] Brenda Feacher testified that she did not hear any racial slurs directed at her or her husband by any
Hotel employees until after Anthony Feacher asked to speak to the manager. B. Feacher dep. trans. p. 37.

out of my F'ing restaurant, you f------ n-----."

In response to the alleged racial slurs, Mr. Feacher claims that he "tried to keep [his] cool and did keep [his] cool."   Notwithstanding plaintiffs' allegation that their plates were taken from them, Mr. Feacher was handed a check after the alleged incident, and Mr. Feacher "paid for his breakfast and gave a 20 percent gratuity."

Def. L.R. 7.1(a)(3) Stat. ¶¶ 29-33 (citing and quoting Anthony Feacher's dep. trans, pp. 54, 57, 59, 60, & 66); <u>see</u> <u>also</u> B. Feacher dep. trans. pp. 39-40 (testifying that Brown stated: "N–-----ers don't belong here" and "Your n–-----er money don't mean nothing to me.").

 After the incident, Anthony Feacher contends that he went to the front desk, told an employee everything that had happened that day, and was told: "We will take care of it."  A. Feacher dep. trans., p. 63; <u>but see</u> B. Feacher dep. trans. p. 41 (testifying that, after the incident, they went to the front desk where Anthony Feacher asked for the name and number of "someone he [could] call in reference to the incident" and was given a business card but did not describe the incident).  Plaintiffs then went to their rooms where they waited until they got on the bus and returned to New Jersey.  A. Feacher dep. trans., p. 100

## IV.    DISCUSSION

### a.    <u>Intercontinental Hotels Group</u>

Defendants move to dismiss all claims against Intercontinental Hotels Group on the grounds that (1) Intercontinental Hotels Group, which is a separate entity from Arena Hotel Corporation, was never served with process, and (2) Intercontinental Hotels Group is an improper party in this action.  Plaintiffs have not opposed this portion of the motion.

The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, <u>see</u> <u>Rizzo-Puccio v. College Auxiliary Services, Inc.</u>, 216 F.3d

1073 (2d Cir. 2000) (claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the Northern District of New York, is deemed consent to granting that portion of the motion. See N.D.N.Y.L.R. 7.1(b)(3)("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown."); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.);  Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999)(McCurn, S.J.).

Further, Plaintiffs bear the burden of proving the adequacy of service, which they have not done. See Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246, 251 (S.D.N.Y. 2003)( "When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy ")(interior quotation marks and citation omitted).  Plaintiffs have also failed to provide any indication as to how they contend Intercontinental Hotels Group is responsible for the discrimination complained of in this matter.   Thus, to the extent that the Complaint alleges claims against Intercontinental Hotels Group, those claims are DISMISSED.

**b.    John & Jane Doe, Richard Roe Defendants**

Plaintiffs have failed to identify the John and Jane Doe and the Richard Roe defendants in this action despite completion of discovery. Accordingly, claims against these unnamed defendants are DISMISSED.  See Burns v. Trombly, 2008 WL 2003804, at * 7 (N.D.N.Y. May 7, 2008).

8

### c.     42 U.S.C. § 1983

To maintain a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish: (1) the deprivation of any rights, privileges or immunities secured by the Constitution or federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983.  "It is settled that conduct by a private entity constitutes state action [for purposes of Section 1983] only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.'" Tancredi v. Metro. Life Ins. Co., 378 F. 3d 220, 229 (2d Cir. 2004)(quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)).  Plaintiffs have not asserted that Defendants are state actors or offered "any factual assertions from which it could be inferred that there was a sufficiently close nexus between defendants and the State." Sanchez v. Thompson, 2007 WL 4574727, at * 4 (E.D.N.Y. Dec. 26,  2007).  Accordingly, all Section 1983 claims asserted in this matter are DISMISSED.

### d.     42 U.S.C. §§ 1985 & 1986

Defendants move to dismiss the § 1985 claim on the grounds that Plaintiffs have failed to present evidence of a meeting of the minds of any actors such to support a viable conspiracy claim.  Defendants further argue that  "Vista Property Management cannot conspire with itself." Def. Mem. L. p. 12.  Plaintiffs have not opposed this portion of the motion.

> A conspiracy claim under 42 U.S.C. § 1985(3) has four elements: (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen. In addition, the conspiracy must be motivated by some

9

class-based animus.

Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007)(citations omitted).

"A plaintiff bringing a conspiracy claim must show that the defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, to violate his rights." Blount v. Swiderski,  2006 WL 3314635, at * 18 (E.D.N.Y. Nov. 14, 2006).  An agreement to conspire is difficult to directly prove and may be inferred from circumstantial evidence. Id. (citing Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 240 (2d Cir.1999); Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999)). However, "innuendo, unrelated incidents and conclusory allegations, without any factual basis" are insufficient to support a conspiracy claim.  Adler v. Pataki, 204 F. Supp.2d 384, 396 (N.D.N.Y.2002).  Plaintiffs have not offered evidence beyond the conclusory allegations of the Complaint that a conspiracy existed. Thus, the claim fails as a matter of law.  Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003).

Further, and assuming *arguendo* that Plaintiffs have presented sufficient evidence to establish a *prima facie* conspiracy claim, the § 1985 claim fails as a matter of law under the intracorporate conspiracy doctrine.  "Under that doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Bond v. Board of Educ. of City of New York, 1999 WL 151702, at * 2 (E.D.N.Y. March 17, 1999). Plaintiffs' claim of conspiracy entails the actions of employees of a single corporate entity. No exception to the intracorporate conspiracy doctrine is advanced by Plaintiffs or applicable from the facts of the case.  See Jeter v. New York City Dept. of Educ.,  --- F. Supp.2d ----, 2008 WL 623135, at * 4 (E.D.N.Y. March 4, 2008)("There is an exception, however, to the intracorporate immunity doctrine that allows a Section 1985 action to

10

proceed against members of the same organization if the conspirators were motivated by an independent personal stake in achieving the corporation's objective.  But the personal stake must be separate and apart from the bias itself, or else the exception would swallow the rule.")(citations, interior quotation marks, and alterations omitted).  Therefore the § 1985 claim is DISMISSED.

"A claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). Inasmuch as there is no viable conspiracy claim under Section 1985, the Section 1986 claim is also DISMISSED.

**e.      42 U.S.C. §§ 1981& 2000a**

_____Plaintiffs contend that there are three events that give rise to § 1981[9] and § 2000a[10] discrimination claims.  The first is the denial of entrance to the restaurant on Friday, February 13, 2004. The second is being seated in the back of the restaurant at

---

[9] 42 U.S.C. § 1981 provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

[10] Title II of the Civil Rights Act of 1964 provides that:

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a).   "A plaintiff seeking to enforce the substantive provisions of § 2000a can obtain only injunctive relief. See 42 U.S.C. § 2000a-3(a); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)."  Lizardo, 2000 WL 976808, at *7.  In this case, Plaintiffs seek, _inter alia_, injunctive relief.

breakfast on Saturday, February 14, 2004.  And the third is denial of service at brunch on

Sunday, February 15, 2004.

_____"In order to establish a claim based on [Section 1981], the plaintiff must show . . .

that the defendant discriminated against him on the basis of race, . . . that [the]

discrimination was intentional, . . . and that the discrimination was a 'substantial' or

'motivating factor' for the defendant's actions." Tolbert v. Queens College, 242 F.3d 58, 69

(2d Cir. 2001)(internal citations and quotations omitted); see General Building Contractors

Association, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982)("[S]ection 1981 . . . can only

be violated by purposeful discrimination."); Perez Rivera v. Hertz Corp., 990 F. Supp. 234,

236-37 (S.D.N.Y. 1997)("With regard to the intent element, plaintiff must show that

defendant's actions were purposefully discriminatory and racially motivated.")(citing Albert

v. Carovano, 851 F.2d 561, 571 (2d Cir.1988)).  The discrimination must concern one of

the activities enumerated in § 1981. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7

F.3d 1085, 1087 (2d Cir. 1993).  These activities include the rights to make and enforce

contracts, to sue, and "to the full and equal benefit of all laws and proceedings for the

security of persons and property."  42 U.S.C. § 1981; see Jenkins v. NYC Transit

Authority, 201 Fed. Appx. 44, 2006 WL 2990242, at * 1 (2d Cir. Oct. 18,

2006)(unpublished decision).  Subsection (b) of § 1981 defines "make and enforce

contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the

contractual relationship," 42 U.S.C. § 1981(b), and has been applied to claims arising from

race-based denial of service at restaurants. See Lizardo v. Denny's, Inc., 2000 WL

976808, at *3  (N.D.N.Y. July 13, 2000)(collecting cases), aff'd 270 F.3d 94, 101 (2d Cir.

2001)("Plaintiffs claim to have been denied the right to contract for food service because

of their race."); see also Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006)("We have never retreated from what should be obvious from reading the text of the statute: Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.").

When a § 1981 claim is based upon circumstantial evidence of discrimination, the claim is "reviewed under the three-step, burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)." Jones v. Western Suffolk Boces, 2008 WL 495498, at *5 (E.D.N.Y. Feb. 20, 2008); see also Jenkins, 2006 WL 2990242, at * 1 ("A plaintiff's efforts to establish . . . a § 1981 claim are subject to the [McDonnell-Douglas] burden-shifting analysis.")(citing Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 146 (2d Cir.1999)); Jones, 2008 WL 495498, at *5 - *6 (applying the McDonnell-Douglas burden-shifting analysis to a Section 1981 claim). Section 2000a claims are analyzed similarly, also using the McDonnell-Douglas burden-shifting framework when the case is based upon circumstantial evidence of discrimination. Stone v. New York Public Library, 2008 WL 1826485, at *3 - *4 (S.D.N.Y. April 28, 2008).

> Under this approach, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Williams v. R.H. Donnelley, Corp., 368 F. 3d 123, 126 (2d Cir. 2004). A plaintiff's burden in presenting prima facie evidence of discriminatory treatment is "minimal," McPherson v. New York City Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006), but the required showing includes the identification of "circumstances giving rise to an inference of discrimination on the basis" of race. McLee v. Chrysler Corp., 109 F. 3d 130, 134 (2d Cir. 1997). "When plaintiffs seek to draw inferences of discrimination by showing that they were 'similarly situated in all material

respects' to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." [Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001)](citation omitted).

If the plaintiff succeeds in making this prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason that motivated the adverse action or, in the § 2000a context, the denial of access to the public accommodation in question. McPherson, 457 F.3d at 215-16. The defendant's burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If the defendant meets this burden, the presumption of discrimination that arises from the plaintiff's prima facie showing "disappear[s]," and the plaintiff must then carry his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against" him. Reeves, 530 U.S. at 143. Under this framework, the defendant will thus "be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)."The court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder . . . that defendants intentionally discriminated against them on the basis of their race." Lizardo, 270 F.3d at 103 (§ 1981); see also id. at 106 (noting that these standards apply to § 2000a claims). "Whether summary judgment is appropriate . . . depends upon 'the strength of the plaintiff['s] prima facie case, the probative value of the proof that the [defendant's] explanation is false, and any other evidence' that supports the defendant['s] case." Id. at 103 (quoting Reeves, 530 U.S. at 148-49).

Stone, 2008 WL 1826485, at *3 - *4.

With regard to the Friday incident, Plaintiffs present evidence of circumstances giving rise to an inference of race-based discrimination. According to Plaintiffs' account, they were denied entrance into the restaurant while two Caucasian couples were seated in the restaurant. Together with the statement of the restaurant employee that "We're closed for you" in response to Anthony Feacher's inquiry of why the two Caucasian couples were allowed in, a reasonable fact finder could conclude that the denial of service was motivated by considerations of Plaintiffs' race.

Defendants have failed to offer evidence of a legitimate reason for the denial of

service on Friday evening, see Def. Mem. L. p. 7,[11] instead challenging whether the two

Caucasian couples Plaintiffs saw enter the restaurant were served once inside the

restaurant.  Id.[12]   Whether the Caucasian couples were served once inside the restaurant

is a factual issue that cannot be resolved on this motion.  Assuming for purposes of this

motion that these couples were allowed access into the restaurant for purposes of service

(a reasonable conclusion based on Plaintiffs' contention that the couples were "seated" by

the restaurant staff), there is sufficient evidence upon which to conclude that Plaintiffs

were discriminated against by the unknown restaurant employees who prevented them

from entering. See Lizardo, 2000 WL 976808, at *3 ("Generally, a plaintiff's prima facie

case, combined with sufficient evidence to find that the [defendant's]  asserted justification

is false, may permit the trier of fact to conclude that the [defendant] unlawfully

discriminated.")(citations and quotation marks omitted).

        With regard to Plaintiffs' claims that they were treated in a discriminatory manner by

being seated in the back of the restaurant on Saturday, February 14, 2004, the claims

must be dismissed. The undisputed evidence reveals that Plaintiffs neither complained to

restaurant staff of their seating location nor were they denied entry or service on this date.

---

[11] In their moving Memorandum of Law, Defendants assert: "In the case at bar, the records reveals
that the defendants have set forth a legitimate explanation for any 'confusion' regarding the location of the
plaintiffs' breakfast." Def. Mem. L. p. 7 (emphasis added). Inasmuch as the Friday incident did not involve
breakfast, it appears that this explanation is not directed to this instance. In their Reply Memorandum of Law,
Defendants assert that the restaurant was closed when Plaintiffs arrived on Friday night, and speculate that
the people entering the restaurant may have been staff members.  However, other than setting forth the
argument in the Reply Memorandum of Law, Defendants have not presented evidence of this position such to
meet their initial burden on summary judgment.

[12] Defendants argue simply: "The undisputed record also reveals that the plaintiffs have no
knowledge as to whether Caucasian couples were served at the restaurant on Friday, February 13, 2004,
when they were told the restaurant was closed.  Additionally, the plaintiffs have no information concerning the
identity of these employees." Def. Mem. L. p. 7.

15

Assuming that the hostess asked "What do you people want here?" when Plaintiffs walked into the restaurant that morning, there is insufficient evidence from which a reasonable fact finder could conclude that the question was laced with racial innuendo as opposed to differentiating the location of the ski group's already-paid-for breakfast being held in the ball room from the breakfast offered in the restaurant. See fn. 6, *supra*.  Further, there is insufficient evidence from which a reasonable fact finder could conclude that the seating location was selected for a discriminatory reason.  The Plaintiffs' "feelings and perceptions of being discriminated against are not evidence of discrimination."  Bickerstaff v. Vassar College, 196 F.3d 435, 456  (2d Cir.1999); see id. at 448.[13]  Thus, there is insufficient evidence to establish circumstances giving rise to an inference of discrimination on the basis of race relative to Plaintiffs' seating location on this date.

Accepting as true Plaintiffs' allegations that on Sunday morning they were subjected to racial slurs and had their omelets thrown in the garbage, they have established a prima facie case of discrimination.  See Lizardo, 2000 WL 976808, at *3.[14]

---

[13] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[14] As the District Court noted in Lizardo:

> To establish a prima facie case of discrimination under § 1981, Plaintiffs must demonstrate: (1) they are members of a racial minority; (2) they made themselves available to receive and pay for services ordinarily provided by [the defendant] to all members of the public in the manner in which they are ordinarily provided; and (3) they did not enjoy the privileges and

(continued...)

16

Defendants' purported legitimate business reasons for some of the conduct or statements

of restaurant employees on the date in question[15] do not overcome Plaintiffs' contentions

that were subjected to racial slurs and had their omelets thrown in the trash before they

were able to eat them.[16] The actions and comments of restaurant manager Timothy

Brown, if true, establish the classic example of racial discrimination that § 1981 or § 2000a

were enacted to combat. See Daniel v. Paul, 395 U.S. 298, 307-08 (1969)("[T]he

overriding purpose of Title II [was] 'to remove the daily affront and humiliation involved in

discriminatory denials of access to facilities ostensibly open to the general public.'") (citing

H.R.Rep. No. 88-914); Green v. Dillard's, Inc., 483 F.3d 533, 540 (8th Cir. 2007)("While

direct evidence is not necessary to raise a reasonable inference of discriminatory intent,

---

[14](...continued)
benefits of the contracted for experience under factual circumstances which rationally
support an inference of unlawful discrimination in that (a) they were deprived of services
while similarly situated persons outside the protected class were not deprived of those
services and/or (b) they received services in a markedly hostile manner and in a manner
which a reasonable person would find objectively unreasonable.

2000 WL 976808, at *3.

[15] Defendants contend that any statements made to Plaintiffs about being in the restaurant as
opposed to the ball room arose because of  "confusion" regarding the location of the Plaintiffs' breakfast, and
argue that the location of the ski group's breakfast in the ball room

was based on legitimate reasons, and certainly did not constitute racial discrimination.  The
reason for this breakfast service in the ballroom is that the hotel must keep track of which
guest's meals the hotel must charge for; a guest who is not part of the ski group must pay for
his or her breakfast, while a ski group member is entitled to a free breakfast, for which they
have already paid. This also avoid[s] confusion among ski group members who do not want
to pay for the meals that they have already paid for.

Def. Mem L. pp. 7-8.

Defendants further contend that "[a]lthough plaintiffs allege that their omelets were taken from them,
at no time did [restaurant employees] advise the plaintiffs that they could not eat in the restaurant."  Id. p. 8.

[16] Defendants assert that no racial slurs were uttered by any restaurant staff, and that Plaintiffs'
omelets were not taken from them. See  Def. L.R. 7.1(a)(3) Stat. ¶¶ 43-69.  However, because this a motion
for summary judgment, the Court must accept the non-movants' version of events.

calling customers 'niggers' is direct evidence of discrimination" sufficient to make out a Section 1981 claim."); <u>see also</u> <u>Lizardo</u>, 2000 WL 976808, at *3 (a prima facie claim of § 1981 discrimination is made out when, together with other evidence of racial discrimination, a plaintiff receives services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.).

A more difficult question, however, is whether the actions of the unknown restaurant employees on Friday night, and that of Timothy Brown and the unidentified restaurant employees on Sunday morning, can be imputed to the employer for purposes of §§ 1981 and 2000a liability.  The determination of when, and under what circumstances, a private employer can be held responsible under § 1981 for the acts of an employee has not been resolved by the Supreme Court, <u>see</u> <u>Cerqueira v. American Airlines, Inc.</u>, 520 F.3d 1, 18 (1ˢᵗ Cir. 2008)("[T]he Supreme Court has not addressed the scope of any respondeat superior liability in § 1981 claims generally."), or the Second Circuit.  The district courts in this Circuit that have addressed vicarious liability for private entities under § 1981 seemingly require conduct perpetrated by a manager or supervisor who could fairly be said to be carrying out the will or policy of the defendant-employer, <u>see</u> <u>Perez Rivera v. Hertz Corp.</u>, 990 F. Supp. 234, 238 (S.D.N.Y. 1997)("[D]efendant's conclusory contention that Hertz cannot be held vicariously liable for the actions of Ceriello is without merit. Ceriello was an area manager acting in a supervisory capacity. The evidence shows that he made the ultimate decision to refuse to rent a Hertz car to plaintiffs. These alleged actions establish the personal involvement necessary to hold Hertz liable [under Section 1981]."); <u>see also</u> <u>Stucky v. Wal-Mart Stores, Inc.</u>, 2005 WL 2008493, at * 9  (W.D.N.Y. Aug. 22, 2005)(Discussing respondent superior in a §1981

case based upon asserted racial discrimination by a Wal-Mart cashier and her manager in refusing to cash Plaintiff's check, but granting summary judgment to Defendant because "plaintiff has not presented any evidence that Wal-Mart management intentionally discriminated against plaintiff."); Negussey v. Syracuse University, 1997 WL 141679, *5 (N.D.N.Y. Mar. 24, 1997)("To summarize: except in the case of harassment by nonsupervisory coworkers, the employer is liable for the acts of supervisors under the rule of respondeat superior in both Title VII and § 1981 cases.")(emphasis added), or where there existed prior notice to the defendant-employer of the employee's offending conduct within the scope of the employee's duties. See Tiu-Malabanan v. University of Rochester, 2008 WL 788637, at * (W.D.N.Y. March 21, 2008)("Plaintiff's allegations in the complaint concede that actual notice is necessary . . . . Plaintiff cites no case in which a school district or university has been held vicariously liable for the acts of its teacher which were outside the scope of the teacher's employment, nor has she plead any facts to show that [the employee's] acts alleged to be in violation of § 1981 were part of her duties as a clinical instructor.").  The other courts that have addressed the issue are not in uniformity. See Green v. Dillard's, Inc., 483 F.3d 533, 540-41 (8th Cir. 2007)(denying summary judgment to employer on § 1981 claim where evidence existed of prior hostile and potentially racist conduct by sales clerk); Arguello v. Conoco, 207 F.3d 803, 810 (5th Cir. 2000)(applying general agency principles as stated in the Restatement (Second) of Agency § 219 to determine whether an employer is subject to liability for the torts committed by his employee acting in the scope of his employment in the context of a public accommodations discrimination suit under 42 U.S.C. § 2000a and 42 U.S.C. §

1981);[17] Daniels v. Dillard's, Inc., 373 F.3d 885, 888 n. 4 (8th Cir. 2004);[18] Gainey v.

Kingston Plantation, 2008 WL 706916, at * 6  (D.S.C., March 14, 2008)("Courts within the

Fourth Circuit disagree as to whether the doctrine of respondeat superior applies in § 1981

cases.")(citing cases);  Perry v. Command Performance, 1991 WL 46475, at *3 (E.D.Pa.

March 27, 1991)(An "employer may be held liable under Section 1981 for the

discriminatory acts of a non-management employee if 'the harassment was so pervasive

that an inference of constructive knowledge arises.'")(quoting Huddleston v. Roger Dean

Chevrolet, Inc., 845 F.2d 900, 904 (11th Cir.1988)),  aff'd, 945 F.2d 395 (3d Cir. 1991)).

While Defendants have argued that there can be no vicarious liability because there

is no evidence that the employer "knew of should have known about Timothy Brown's

conduct," Def. Mem L. p. 12, neither party has briefed this issue.  It may be that, even

absent prior similar conduct by Brown, his position (professing to be the "manager/owner"

of the restaurant) was such that he could be fairly be said to be carrying out the will or

---

[17] The Arguello court looked to the following factors to determine whether the employer could be held liable for the torts of an employee acting within the scope of their employment: "1) the time, place and purpose of the act; 2) its similarity to acts which the servant is authorized to perform; 3) whether the act is commonly performed by servants; 4) the extent of departure from normal methods; and 5) whether the master would reasonably expect such act would be performed." Arguello, 207 F.3d at 810.

[18] The Eighth Circuit wrote in Daniels:

We question whether Dillard's in any event may be held liable under §§ 1981 and 1982 for the allegedly discriminatory actions of an unidentified sales clerk under a theory of respondeat superior. Liability under §§ 1981 and 1982 requires a showing of intentional discrimination, Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir.1996) (per curiam ), which is seemingly incompatible with respondeat superior principles. See Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr., 876 F.2d 1231, 1236 (5th Cir. 1989) ("Because each defendant must be found to have intentionally discriminated against the plaintiff, strict liability under § 1981 is incongruous."); cf. Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir.1993) (holding that a private store acting under color of state law cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory). Because the parties have neither raised nor briefed the issue, we leave its resolution to another day.

373 F.3d at 888 n. 4.

policy of the employer.  Further, the circumstances surrounding the Friday night incident
are unclear.  Depending on the legal standard for vicarious liability of non-supervisory
employees,  there may be facts from which a fact finder could conclude that the employer
is responsible for the employees' conduct on this night.   Given the fundamental
importance of the issue of vicarious liability in this case, the Court will deny the motion on
the §§ 1981 and 2000a claims arising from the Friday and Sunday incidents with leave to
renew.  Should the remaining Defendants desire to renew the motion for summary
judgment on the remaining §§ 1981 and 2000a claims, they may do so by a filing a second
motion for summary judgment within thirty (30) days of this Decision and Order.  In such a
motion, they may present facts and legal argument which, they contend, defeat vicarious
liability on the §§ 1981 and 2000a claims.  Defendants may also renew at that time their
argument for dismissal of Plaintiffs' demand for punitive damages under § 1981.

### f.    New York Civil Rights Law §§ 40 and 41

New York Civil Rights Law § 40 prohibits, among other things, denial of access to
places of public accommodation on the basis of race. See N.Y. Civil Rights Law § 40;
Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc., 79 N.Y.2d
227, 234 (1992).  New York Civil Rights Law § 41 "establishes a private cause of action to
recover a statutory penalty against those who violate these rights or who aid or incite such
a violation." Jews for Jesus, Inc., 79 N.Y.2d at 234; see N.Y. Civil Rights Law § 41.
Section 41, which is penal in nature,[19] requires that "[a]t or before the commencement of

_____

[19] Section 41 provides in part: "[S]uch person and the manager or owner of or each officer of such . . .
corporation [that violates § 40] shall, also, for every such offense be deemed guilty of a misdemeanor, and
upon conviction thereof shall be fined not less than one hundred dollars nor more than five hundred dollars,
(continued...)

any action under this section, notice thereof shall be served upon the attorney general."
N.Y. Civil Rights Law § 41.  The failure to comply with the notice provisions of New York
Civil Rights Law Article 4 is fatal to a private action under that Article. See Perez Rivera,
990 F. Supp. at  238 ("Failure to actually comply with [N.Y. Civil Rights Law ] section 40-d
[which requires notice to be served on the attorney general] mandates dismissal of a
section 40-c claim [asserting race discrimination].").  "Additionally, failure to allege such
compliance may mandate dismissal if a plaintiff is unable to show that notice was actually
given." Id. (citing Harvey v. NYRAC, Inc., 813 F. Supp. 206, 212 (E.D.N.Y. 1993)).

Plaintiffs have not alleged that they have complied with the notice provisions of §
41, and there is no indication on the present record that such notice was actually given.
Accordingly, the §§ 40 and  41 claims will be dismissed on the 21st day following issuance
of this Decision and Order unless Plaintiffs submit evidence to the Court and opposing
counsel that the Attorney General of the State of New York was served with notice of this
action "at or before the commencement" of suit.  If evidence of such notice is presented,
Defendants may renew their motion for summary judgment seeking to dismiss the §§ 40
and  41 claims based on the Friday and Sunday incidents.  The §§ 40 and  41 claim
arising from the Saturday incident is DISMISSED because there is no proof of a denial of
access to a place of public accommodation on this date.

**g.      State Common Law**

_____Defendants move to dismiss the Seventh Cause of Action, which seemingly asserts

---

[19](...continued)
or shall be imprisoned not less than thirty days nor more than ninety days, or both such fine and
imprisonment."

a state common law claim sounding in negligent failure to train or supervise restaurant staff,[20] on the ground that there is no evidence supporting the failure to train or supervise theory.  See Defs. Mem. L. pp. 12-13.  Plaintiffs have not opposed this portion of Defendants' motion.   Given Plaintiffs' failure to oppose this portion of the motion, they have impliedly indicated their consent to dismissal of this claim.

Further, from a reading of the Seventh Cause of Action, it appears that Plaintiffs allege common law negligence claims *only* against Intercontinental Hotels Group and Holiday Inn, and allege federal or state constitutional deprivations against these two defendants and against Arena and Vista.  See Compl. ¶ 37.   Inasmuch as (1) Intercontinental Hotels Group and Holiday Inn have been dismissed from this action, and (2)  Plaintiffs have failed to amend the Complaint to substitute for Intercontinental Hotels Group and Holiday Inn despite information provided at the infancy of this case that these putative defendants were improper parties, negligence claim as asserted must be DISMISSED.   To the extent that the Seventh Cause of Action could be read as pleading a common law negligent failure to train or supervise claim against Arena and/or Vista, the claim is DISMISSED for failure to present evidence of a training inadequacy, see Jones v. J.C. Penney's Dept. Stores, Inc., 2007 WL 1577758, at * 27 (W.D.N.Y. May 31, 2007),

---

[20]The Seventh Cause of Action, which consists of one paragraph, asserts:

Defendant INTERCONTINENTAL HOTELS GROUP, its employees, agents and/or servants and/or HOLIDAY INN, its employees, agents and/or servants in violation of 42 U.S.C. § 1981, and state negligence laws, failed in their duty to plaintiffs to adequately train and supervise Timothy Brown and/or [the Doe and Roe defendants] . . . so as to prevent [discrimination]. Such a failure on the part of defendants INTERCONTINENTAL HOTELS GROUP, . . . , HOLIDAY INN, . . . , VISTA PROPERTY MANAGEMENT, . . . , and ARENA HOTEL, . . . , amounted to a deliberate indifference to the constitution [*sic*] rights of the plaintiffs.

Compl. ¶ 36.

May 31, 2007 ("[A] failure-to-train claim requires that a plaintiff establish training

inadequacy reflecting "deliberate indifference" to the rights of those persons with whom

the defendant employees come into contact. . . .  Plaintiff points to no evidence tending to

establish such element of the claim but, rather, relies on mere conclusory allegations

which are insufficient to avoid summary judgment.")(citations omitted), or that the

employer knew or should have known of Timothy Brown and the other employees'

purported  racist propensities. See Tesoriero v. Syosset Central School Dist., 382 F.

Supp.2d 387, 401 (E.D.N.Y., 2005)("[T]o prevail on a negligent . . . supervision claim

under New York law, the plaintiff must show that the defendant/employer knew or should

have known of its employee's propensity to engage in the injurious conduct in question.

Where the plaintiff fails to make such a showing, summary judgment for the defendant is

appropriate.")(citations omitted).

### h.     State Constitutional Claim

Plaintiffs allege in the Sixth Cause of Action that the Does Defendants' actions

violated Plaintiffs' rights under the "New Jersey State Constitution."  See Compl. ¶ 35.

Inasmuch as all claims against the Doe Defendants are dismissed, the Sixth Cause of

Action fails. To the extent the Seventh Cause of Action asserts a violation of the New

Jersey State Constitution by Arena and/or Vista, the claim is DISMISSED because there is

no evidence of conduct occurring within the State of New Jersey.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment  [dkt. #

31] is **GRANTED IN PART and DENIED IN PART**. In this regard, all claims against all

defendants are **DISMISSED** <u>**except**</u> the claims brought against Defendants **VISTA PROPERTY  MANAGEMENT and ARENA HOTEL** pursuant to 42 U.S.C. §§ 1981, 2000a, and the New York Civil Rights Law §§ 40, 41 arising from the events occurring on Friday, February 13, 2004 and Sunday February 15, 2004.

Plaintiffs shall, within twenty (20) days of the date of this Decision and Order, file with the Court and serve upon counsel for the Defendants proof that the New York State Attorney General was served with notice of this action "at or before the commencement" of suit.  Absent filing such proof, the remaining claims under New York Civil Rights Law §§ 40, 41 shall be dismissed without further order.

Defendants are granted leave to file a second motion for summary judgment in accordance with this Decision and Order provided such motion is filed within thirty (30) days of this Decision and Order.

**IT IS SO ORDERED**.

DATED:   June 3, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

25